**GALLAGHER ASPHALT
CORPORATION,
Plaintiff,**

**v.**

**INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 150, AFL–CIO, and Joseph Ward, and William Jansma, individually and as representatives of a class consisting of certain employee members represented by Local 150, Defendants.**

**No. 97 C 4286.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 17, 1997.

Charles E. Murphy, Robert P. Casey, Carol A. Poplawski, Murphy, Smith & Polk, Chicago, IL, for Plaintiff.

Louis E. Sigman, Baum, Sigman, Auerbach, Pierson & Neuman, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is plaintiff Gallagher Asphalt Corporation's ("Gallagher") motion for a temporary restraining order that would order defendants (collectively, "the Union") to halt an ongoing strike of Gallagher. For the reasons that follow, the court grants the motion.

### I. BACKGROUND

The facts boil down to these. The Union is striking Gallagher. Gallagher and the Union dispute the reasons for the strike. Gallagher claims that the strike is over its failure to pay three weeks' back pay to Union member Jim Russell, who Gallagher laid off, but who returned to work three weeks later at the Union's behest; as well as over Gallagher's use of laborers instead of operating engineers to perform certain work within its asphalt plants, regarding which the Union has filed a grievance.

The Union claims that the strike is over only the unfair labor practice involving Russell, where Russell was laid off; was not called back by Gallagher but rather was sent back to work by the Union; was not paid for the three weeks that he was not working; and was not restored to his position on the "first crew." The Union has not filed a grievance on Russell's behalf, but has filed a National Labor Relations Board ("NLRB") charge against Gallagher; the charge is still pending.

The strike is preventing Gallagher from doing work on its projects, including an extensive I–80 resurfacing project. The work stoppage is costing Gallagher at least a quarter of a million dollars per day, and is affecting other companies and workers employed on the I–80 project and other projects in which Gallagher is involved.

The collective bargaining agreement between Gallagher and the Union ("agreement") contains a mandatory arbitration provision, which requires arbitration of any

claim or dispute involving an interpretation or application of the agreement by an employee, the Union, Gallagher, or the bargaining agent that any of the other is violating or has violated the agreement. (Compl. for Injunction and Damages Ex. 1 at 17.) The agreement also contains a no-strike provision, prohibiting strikes or work stoppages by the Union, except under three circumstances: where Gallagher fails to pay pension, health, vacation, or dues contributions; where Gallagher fails to pay wages, with one exception to be discussed below; and where an employee refuses to enter property involved in a legitimate labor dispute or cross a picket line. (*Id.* at 28–29.)

The one exception to the no-strike exception regarding failure to pay wages applies where a bona fide dispute over the amount of wages due exists. (*See id.* at 29.) Thus, the provision allowing strikes over non-payment of wages is "inoperative if the amount of wages it bonafidely [sic] disputed. In such instance, [Gallagher] shall then pay the wages admitted to be due and the balance shall be settled by the arbitration procedure as provided herein." (*Id.*) In other words, where Gallagher and the Union have a legitimate dispute over the amount of wages due to an employee, the dispute is subject to mandatory arbitration, and the Union may not strike over the dispute.

## II. *DISCUSSION*

Gallagher contends that this court can and should enjoin the Union from striking, since the strike, which is causing Gallagher substantial and irreparable harm, is over issues that are subject to the mandatory arbitration and no-strike provisions under the agreement. The Union counters that the strike is over only the unfair labor practice involving Russell, which is not subject to the no-strike provision.

Section 301(a) of the Labor Management Relations Act authorizes lawsuits for violation of contracts between employers and unions to be brought in federal district court. 29 U.S.C. § 185(a). In *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the Supreme Court held that a griev-

ance arbitration provision in a collective bargaining agreement could be enforced through a section 301(a) lawsuit. *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 577–78, 80 S.Ct. 1347, 1349, 4 L.Ed.2d 1409 (1960) (citing *Textile Workers,* 353 U.S. at 456–57, 77 S.Ct. at 917–18). The Supreme Court also stated that "the policy to be applied in enforcing this type of arbitration was that reflected in our national labor laws," and that "[t]he present federal policy is to promote industrial stabilization through the collective bargaining agreement." *Id.* (citing *Textile Workers,* 353 U.S. at 453–54, 456–57, 77 S.Ct. at 916, 917–18).

Thus, "[a] major factor in achieving industrial peace is the inclusion of a provision for arbitration of grievances in the collective bargaining agreement." *Warrior and Gulf,* 363 U.S. at 578, 80 S.Ct. at 1350. In fact, "[c]omplete effectuation of the federal policy is achieved when the agreement contains both an arbitration provision for all unresolved grievances and an absolute prohibition of strikes, the arbitration provision being the 'quid pro quo' for the agreement not to strike." *Id.* n. 4 (citing *Textile Workers,* 353 U.S. at 455, 77 S.Ct. at 917).

■ In *Warrior and Gulf,* the Supreme Court explicitly stated that Congress, through section 301(a), has assigned the federal district courts the duty of determining whether a party who refuses to arbitrate has breached its promise to arbitrate under a collective bargaining agreement. *Warrior and Gulf,* 363 U.S. at 582, 80 S.Ct. at 1353. Thus, "the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance." *Id.* The court should order the parties to arbitrate the grievance "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* Doubts should be resolved in favor of coverage by the arbitration clause. *Warrior and Gulf,* 363 U.S. at 583, 80 S.Ct. at 1353. *See also Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 377–379, 94 S.Ct. 629, 636–38, 38 L.Ed.2d 583

(1974) (discussing the "presumption of arbitrability for labor disputes").

■ Expanding upon *Textile Workers, Warrior and Gulf,* and similar cases, the Supreme Court held in *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* that a federal district court may enjoin a strike that violates a mandatory arbitration clause in a collective bargaining agreement. 398 U.S. 235, 253, 90 S.Ct. 1583, 1593–94, 26 L.Ed.2d 199 (1970). The Court adopted the following test for whether the district court should grant injunctive relief:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate.... When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."

*Boys Markets,* 398 U.S. at 254, 90 S.Ct. at 1594 (quoting *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962)).

■ In the present case, the court finds that the issues arising out of Russell's lay-off, over which the Union now is striking, are arbitrable under the agreement. Under the agreement, all grievances must be resolved under Article XIII of the agreement. (*See* Compl. Ex. 1 at 17.) A grievance is defined

as any claim or dispute, involving an interpretation or application of the agreement, by Gallagher, the Union, an employee, or the bargaining agent against one of the others that the other is violating or has violated the agreement. (*Id.*)

According to the Union, it is striking over Gallagher's discharge of Russell allegedly in retaliation for Russell's union activities,[1] and failure to pay Russell for the three weeks during which he was not working and to restore Russell to the "first crew" to which he has been assigned since 1982. Each of these issues involves an interpretation or application of the agreement.

The agreement provides that Gallagher has the right to discharge an employee for just cause. (*See* Compl. Ex. 1 at 13.) Thus, the issue of whether Russell was properly discharged is one that is governed by the agreement.

Similarly, the agreement sets forth the method by which employees are hired and assigned to jobs for Gallagher. (*See id.* at 16, 40–47). The hiring provision gives Gallagher the right to assign preferred employees to other assignments. (*See id.* at 16.) Thus, the issue of whether Gallagher has wrongfully failed to restore Russell to the "first crew," or whether it has the right to assign Russell to a different assignment, also is determined by the provisions of the agreement.

The issue of whether Russell is due back pay for the three weeks that he did not work also is governed by the agreement, in that the agreement contains provisions regarding discharge, severance pay, and wage payment in general. (*See id.* at 7, 13, 18.) In fact, the agreement explicitly provides that a bona fide dispute over wages must be settled by the arbitration procedure provided in the agreement. (*See id.* at 29.)

Consequently, each of the issues over which the Union claims that it is striking must be decided under the mandatory arbitration procedure set forth in the agreement.

---

1. The court notes that Russell returned to work three weeks after Gallagher discharged him, regardless of whether it was Gallagher who called him or the Union who sent him back, and has been working since.

In other words, the threshold requirement of a *Boys Markets*-type of injunction [2] is met: the court holds that the Union's strike is over issues that it and Gallagher are contractually bound to arbitrate. *See Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. Because Gallagher and the Union are contractually bound to arbitrate the issues over which the Union is striking, the Union has an implied (as well as an explicit) duty not to strike over those arbitrable issues. *See Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO*, 428 U.S. 397, 406–09 n. 10, 96 S.Ct. 3141, 3147–48 n. 10, 49 L.Ed.2d 1022 (1976).

■ The court also finds that Gallagher has shown, at least at this preliminary stage, that "ordinary principles of equity," *id.*, warrant granting the temporary restraining order. Gallagher has provided evidence that breaches of the agreement are occurring, in that the Union is striking over issues that it is compelled to arbitrate; that the breaches have caused and are causing irreparable injury to Gallagher, in that Gallagher is losing hundreds of thousands of dollars each day of the strike; and that Gallagher will suffer more from the denial of a temporary restraining order than will the Union from its issuance. *See id.*

With respect to this last factor, the court again notes that Russell currently is working, and has been working since three weeks after his lay-off; thus, the only disputes that remain with respect to Russell's lay-off are whether he is owed three weeks of back pay and whether he should be restored to the "first crew." These are relatively minor disputes when compared to Gallagher's loss of huge sums of money each day, as well as the repercussions to the I–80 project and other companies and workers involved in Gallagher's projects.

Accordingly, the court holds that a temporary restraining order should issue, restraining the Union from striking against Gallagher.

---

**2.** The court emphasizes that the motion before it is one for a temporary restraining order, and therefore that the court is not deciding whether or not to grant an injunction, but only whether

### III. CONCLUSION

For the foregoing reasons, the court grants Gallagher's motion for a temporary restraining order.

IT IS THEREFORE ORDERED that said defendants, all striking members thereof, and all persons acting in concert and participation with them, be and hereby are enjoined and restrained from engaging in strikes, slowdowns, work stoppages, interruptions of work and/or picketing at plaintiffs facility located at 181st Street and Indiana Avenue, Thornton, Illinois over grievances, disputes, controversies, and/or differences which are subject to the grievance and arbitration provisions of the aforementioned Operating Highway and Underground Agreement.

IT IS FURTHER ORDERED that this Order shall be effective until 3:30 p.m. on June 27, 1997.

---

or not to grant a temporary restraining order. Nonetheless, the same law that governs injunctions also governs this preliminary relief.